## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Melvin Moore p/k/a "4Rest," <br><br>            Plaintiffs, <br><br>   -against- <br><br><br> Chloe Bailey, <br> Columbia Records, a Division of Sony <br> Music Entertainment, Inc., <br> Parkwood Entertainment LLC, <br> Sony Music Entertainment, Inc., <br> ABC Corporation 1-10, and <br> JOHN and JANE DOES 1-10, <br>            Defendant. | Civil Action No.: 25-1472 <br><br><br> **COMPLAINT** <br><br><br><br> **JURY TRIAL DEMANDED** |

Plaintiff Melvin Moore (professionally known as "4Rest"), by and through his undersigned counsel, brings this Complaint against Chloe Bailey, Columbia Records, a division of Sony Music Entertainment, Inc., Parkwood Entertainment, LLC, Sony Music Entertainment, Inc., ABC Corporation 1-10, and JOHN and JANE DOES 1-10, and alleges as follows:

### NATURE OF ACTION

1. This civil action seeks damages, declaratory relief, and injunctive relief for Defendants' willful copyright infringement, fraudulent misrepresentation, violations of the Digital Millennium Copyright Act (DMCA), civil conspiracy, and deceptive business practices.

2. Plaintiff Melvin Moore p/k/a "4Rest", a GRAMMY-nominated singer, songwriter, producer, and recording artist, contributed substantial original lyrics, melodies, and creative direction to several master recordings entitled "Favorite," "Might As Well," and "Same Lingerie" (inclusive of the underlying compositions)(each a "Work" and collectively the "Works"), that were commercially released by Defendants and embodied on Defendant Chloe Bailey's album entitled "Trouble in Paradise" (the "Album") without his knowledge or consent.

3. Specifically, Defendants failed to seek permission from Plaintiff to commercially exploit the Works despite actual knowledge of his substantial contributions to the Works. Defendants also failed to engage in good-faith negotiations with Plaintiff prior to the commercial release of the Works concerning the contractual terms Plaintiff would be willing to accept to grant

Defendants the exclusive right to commercially exploit the Works.

4. Additionally, Defendant failed to accord Plaintiff proper professional writing credit for the Works or compensate him for his significant contributions.

5. As with most creatives, the lyrical contributions to the Works by Plaintiff were deeply personal and inspired by his lived experiences, making the unauthorized commercial exploitation of the Works even more egregious.

6. In particular, the lyrics and narratives were derived from intimate and real-life situations, reflecting his relationships, emotions, and personal struggles:

   a. "**Might as Well**" was directly inspired by Plaintiff's romantic relationship at the time. He was dating a woman who had been cheated on, and he encouraged her to take back her power in the breakup. The Plaintiff sought to tell the most compelling story from a woman's perspective, capturing the raw emotions and aftermath of betrayal in the Work.



**DEFENDANT CHLOE BAILEY INTENTIONALLY DISREGARDED THE DMCA VIOLATION AND CEASE AND DESIST NOTICE ISSUED BY PLAINTIFF AND PROMOTED THE WORK "MIGHT AS WELL" ON TIKTOK TO OVER 95.7 THOUSAND PEOPLE**

b. **"Same Lingerie**" was inspired by another profoundly personal relationship between Plaintiff and a woman who recorded the original demos for the Work.  The Plaintiff and his partner crafted the lyrics based on her hesitations and emotional struggles following a previous relationship.  The Work reflected her discomfort with intimacy post-breakup and how she felt she could not wear the same lingerie she once wore for her ex, illustrating a vulnerable and deeply personal perspective on love and loss.



**DEFENDANT CHLOE BAILEY INTENTIONALLY DISREGARDING THE DMCA VIOLATION AND CEASE AND DESIST NOTICE ISSUED BY PLAINTIFF AND PROMOTING THE WORK, "SAME LINGERIE, " ON INSTAGRAM TO OVER 260 THOUSAND PEOPLE**

7.  Despite Plaintiff's significant emotional and creative investment in the Works, Defendants— including Chloe Bailey, Parkwood Entertainment LLC, Sony Music Entertainment, and Columbia Records—misappropriated his contributions to the Works, falsely registered the Works under their names, and exploited the Works for commercial gain across multiple revenue-generating commercially viewable platforms without authorization.

8.  Defendants' knowing and willful misconduct includes:

a.  Unauthorized public performances and distribution of the Works;
b.  Failure to appropriately credit or compensate Plaintiff as a songwriter and contributor in connection with the Works;
c.  Fraudulent copyright registration of the Works filed with the U.S. Copyright Office;
d.  Continued exploitation of the Works on YouTube, streaming services, social media,

and other commercially viewable platforms;

    e. Circumvention of copyright protections and suppression of Plaintiff's claims; and

    f. Disregarding DMCA takedown and Cease and Desist notices and legal demands for removal of the Works from the stream of commerce.

9. Plaintiff brings this action according to 17 U.S.C. § 501 (Copyright Infringement), 17 U.S.C. § 512 (DMCA Violations), 17 U.S.C. § 506(e) (Fraudulent Misrepresentation), and New York General Business Law § 349 (Deceptive Business Practices).

10. Plaintiff seeks:

    a. Actual and statutory damages, including up to $150,000 per willful infringement.

    b. Injunctive relief preventing further commercial exploitation of the Works;

    c. A full forensic audit of Defendants' revenue streams from the unauthorized commercial exploitation of the Works;

    d. Disgorgement of profits and imposition of a constructive trust overall revenues derived from the Works;

    e. An order requiring Defendants to issue a public retraction and proper crediting of Plaintiff pertaining to the Works;

    f. Punitive Damages of $5 Million per song, and

    g. Any other relief deemed just and proper by this Court.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action according to 28 U.S.C. § 1332 (Diversity Jurisdiction) because Plaintiff is a resident of California, Defendants are residents of New York and California, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12. This Court also has jurisdiction under 28 U.S.C. § 1331 (Federal Question Jurisdiction) and 17 U.S.C. § 501 (Copyright Infringement under the U.S. Copyright Act).

13. The venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant Columbia Records is headquartered in New York, a substantial part of the wrongful acts occurred in New York, and Defendants conduct business in this District.

## THE PARTIES

14. Plaintiff Melvin Moore, p/k/a "4Rest," is an individual domiciled in Woodland Hills, CA 91367. He is a GRAMMY-nominated professional singer, songwriter, producer, and recording artist.

4



**Plaintiff Melvin Moore p/k/a "4Rest"**

15. Plaintiff Melvin Moore, p/k/a "4Rest," is a renowned songwriter and producer who has collaborated with GRAMMY Award-winning A-list performing artists and contributed to several hit records that have achieved commercial success and critical acclaim and have undoubtedly positively impacted the culture of music and entertainment. His Work spans multiple genres, cementing his reputation as one of the industry's most sought-after songwriters.

16. Plaintiff has written and contributed to hit records for the following GRAMMY-winning and/or gold and platinum-selling artists, including but not limited to: G-Eazy; French Montana; Usher; Ty Dolla $ign; Chris Brown; 2 Chainz (feat. Ariana Grande); John Legend; Jason Derulo; BTS; Kanye West; Trey Songz; and Drake.

17. The aforesaid contributions by Plaintiff reinforce the egregious nature of Defendants' conduct in failing to acknowledge Plaintiff's rightful authorship in the Works and

Defendants' unwillingness to compensate Plaintiff in accordance with his contributions to the Works and the overall music and entertainment industries.

18. Plaintiff's unique storytelling ability, lyrical craftsmanship, and melodic genius have contributed to the success of some of the biggest commercially released Works in modern music history, both domestically and internationally.

19. The plaintiffs' extensive music catalog showcases his ability to collaborate with global superstars, shaping their sound and elevating their projects to mainstream success.

20. Despite Plaintiff's proven track record of success in the music and entertainment industries, Defendants have engaged in deliberate efforts to erase, diminish, and suppress Plaintiff's contributions and rightful ownership in and to the Works.

21. The Defendant's actions violate the Plaintiff's intellectual property rights and affront his legacy as a distinguished songwriter and creative force in the music and entertainment industries.

22. Defendant Chloe Bailey is an individual domiciled in Sherman Oaks, CA 91403. She is a professional recording artist signed to Columbia Records and the primary beneficiary of the Works.

23. Defendant Columbia Records is a division of Sony Music Entertainment, with its principal place of business at 25 Madison Avenue, New York, New York 10010. Defendant Columbia Records commercially distributed the Works and financially benefited from their unauthorized commercial exploitation.

24. Defendant Parkwood Entertainment, LLC is an entertainment company with its principal place of business at 1384 Broadway, New York, NY 10018. Defendant Parkwood Entertainment, LLC commercially distributed the Works and financially benefited from their unauthorized commercial exploitation.

25. Defendant Sony Music Entertainment, Inc. is the parent company of Columbia Records, with its principal place of business at 25 Madison Avenue, New York, New York 10010. Sony Music Entertainment commercially distributed the Works and financially benefited from their unauthorized commercial exploitation.

26. Defendants ABC Corporation 1-10 are corporations or entities whose identities are currently unknown but who participated in, facilitated, or benefited from the wrongful conduct alleged herein.

27. Defendants John Does 1-10 are other individuals and entities whose identities are currently unknown but who have participated in the wrongful conduct alleged herein.

## FACTUAL BACKGROUND

**Defendants' Intentional and Fraudulent Misrepresentation of Authorship**

28. Plaintiff is a professional GRAMMY-nominated songwriter who contributed substantial original lyrics, melodies, and creative direction to the Works featured on Defendant Chloe Bailey's album "Trouble in Paradise," specifically:

    a. "Same Lingerie"

    b. "Might as Well"

    c. "Favorite"

29. Plaintiff collaborated with producers and co-writers engaged by Defendant Chloe Bailey, including Uforo Ebong, p/k/a "Bongo ByTheWay" ("Producer Bongo"), during the songwriting and recording process in connection with the creation of the Works.

30. On August 8, 2024, Plaintiff, through his music and entertainment attorney, Tiffany Morgan, Esq. ("Attorney Morgan"), contacted Defendant Chloe Bailey's counsel, Jeremy Mohr, Esq. ("Attorney Mohr"), explicitly informing him that his client, Defendant Chloe Bailey, was not the original author of the Works, Plaintiff did not grant consent to the commercial exploitation of the Works, and a request that both parties engage in good-faith negotiations regarding the contractual terms Plaintiff was willing to accept to grant Defendants the right to commercially exploit the Works. (See **Exhibit A**: Email from Tiffany Morgan to Jeremy Mohr, Dated August 8, 2024).

31. Despite this clear notice, on August 9, 2024, Defendants and their legal counsel, like modern-day swindlers, proceeded to fraudulently file copyright registration documents claiming exclusive authorship and ownership over the Works. (See. **Exhibit B**: Copyright Registration No. SR0001013673).

32. These fraudulent copyright filings include U.S. Copyright Registration Number SR0001013673, which falsely identified Sony Music Entertainment and Parkwood

Entertainment as the exclusive claimants and/or authors of the Works, excluding Plaintiff despite his significant authorship contributions.

**Defendants' Unauthorized Exploitation of Plaintiff's Work**

33. Despite Plaintiff's significant contributions to the Works, Chloe Bailey, as the recording artist, Columbia Records and Sony Music Entertainment as the distributors of the Works failed to properly credit, compensate, and/or secure Plaintiff's consent via a negotiated and fully executed contractual agreement in connection with Defendant's unauthorized commercial exploitation of the Works.

34. Chloe Bailey, through her representatives, actively participated in excluding Plaintiff from the clearance process and approved the commercial release of the Works, knowing that Plaintiff did not consent to such exploitation and that Plaintiff's rights were being callously disregarded.

35. Plaintiff, through Attorney Morgan, repeatedly made good-faith attempts to amicably resolve the matter of Defendant's unauthorized commercial exploitation of the Works, a period spanning almost 200 days.

36. In the vein of amicable resolution, and despite the unauthorized commercial release of the Works, Attorney Morgan engaged with Attorney Mohr and informed him of Plaintiff's position with respect to the unauthorized commercial release of the Works.

37. Shockingly, and without Plaintiff's consent, Attorney Mohr added Producer Bongo and Bongo's counsel, Motisola Zulu, Esq. ("Attorney Zulu"), to the confidential and attorney-client privileged communications between Plaintiff and Defendant and instructed Plaintiff to sort the matter with Producer Bongo and Attorney Zulu.

38. Despite the egregious violation referenced above, with seemingly limited options, Attorney Morgan sought to amicably resolve the matter and pushed forward. Attorney Zulu was advised that Plaintiff's contractual terms should be on a so-called "most favored nations" ("MFN") basis with Producer Bongo (*i.e.*, contractual terms at least as favorable as those provided to any other similar contributor in connection with the Works) with Producer Bongo.

39. During the aforesaid 200-day window, Plaintiff issued multiple formal notices and engaged in intense negotiations to resolve the matter amicably and in good faith. Still, Defendants ignored Plaintiff's requests and denied the MFN terms with Producer Bongo (only tentatively approving them towards the end of the 200-day window referenced above). Notably, Attorney Mohr refused to engage with Plaintiff and/or Attorney Morgan during almost the entirety of the negotiations.

40. Upon information and belief, one can only surmise that Attorney Mohr believed that his client was covered due to Defendant's deceptive act of registering Plaintiff Works with the U.S. Copyright office less than 24 hours after Plaintiff, through counsel, put them on notice of his ownership interest in the Works.

## Defendants' Willful Copyright Infringement and DMCA Violations

41. Upon discovering the Defendants' fraudulent misclassification of their ownership interest in Plaintiffs' works, on January 6, 2025, Plaintiff issued a formal Cease and Desist DMCA Violation Notice to the Defendants, demanding the removal of the Works from the stream of commerce.

42. Defendants, including Chloe Bailey, willfully and blatantly ignored Plaintiff's DMCA takedown request and continued to commercially exploit the Works in direct violation of the U.S. Copyright Act (17 U.S.C. § 501 et seq.).

43. Attorney Mohr, legal counsel for Chloe Bailey and Columbia Records, audaciously claimed that Defendants did not require Plaintiff's consent to commercially exploit the Works despite Plaintiff's significant contributions to the Works, demonstrating an intentional and reckless disregard for Plaintiff's intellectual property rights.

## The Hubris of Attorney Mohr and His Disregard for Plaintiff's Rights

44. One of the most egregious aspects of this matter is the blatant arrogance displayed by Attorney Mohr, legal counsel for Chloe Bailey and Columbia Records. During a call on January 7, 2025, Attorney Mohr audaciously asserted that due to the "first use exception," he did not require Plaintiff's consent to commercially exploit the Plaintiff's copyrighted works.



**Jeremy Mohr, The Individual Who Said His Client, Chloe Bailey, <u>DID NOT</u>
Need Plaintiffs Permission to Use Plaintiffs Work**

45. Such a claim is legally dubious and emblematic of the pervasive disregard for creators' rights within the music and entertainment industries.

46. This statement directly contradicts the fundamental principles of copyright law, which afford authors exclusive rights over their works, including the right to control distribution, reproduction, and public performance.

47. Attorney Mohr's dismissive attitude underscores a larger systemic issue—major record labels and their legal representatives operating under the assumption that they can appropriate independent creators' works without proper credit, compensation, or legal agreements in place.

48. Attorney Mohr's assertion disregards the Plaintiff's rightful position as a principal songwriter and contributor to the Works and reflects a willful effort to undermine contractual and legal obligations.

49. This brazen stance not only warrants legal scrutiny but also exemplifies why this case demands immediate judicial intervention.

50. If left unchallenged, such unchecked corporate overreach threatens to set a dangerous precedent—one where major labels and their attorneys can freely exploit independent artists

under the guise of legal technicalities, effectively stripping creators of their hard-earned intellectual property rights.

**Defendants' Repeated Disregard for Plaintiff's Good Faith Pre-Litigation Efforts**

51. In an effort to resolve this matter amicably and without resorting to litigation, the Plaintiff sent multiple formal notices and cease-and-desist letters to the Defendants and their legal counsel.  These communications explicitly informed the Defendants of the Plaintiff's authorship and rights over the disputed works.

52. As previously stated, on August 8, 2024, Attorney Morgan emailed Attorney Mohr, legal counsel for Chloe Bailey and Columbia Records, detailing the Plaintiff's authorship and requesting fair compensation and credit.  Instead of engaging in good faith discussions, Defendants ignored the request and proceeded with their fraudulent copyright registration. (See **Exhibit A**).

53. Despite this clear notice, on August 9, 2024, Defendants knowingly filed fraudulent copyright registrations, misrepresenting ownership of Plaintiff's contributions (See **Exhibit B**).

54. Additional correspondence from the Plaintiff's counsel on January 6, 2025, issued a DMCA takedown request demanding the removal of the Works from the stream of commerce. Defendants blatantly ignored this legal demand and continued profiting from the Works. (See **Exhibit C**: Email from Tiffany Morgan to Motisola Zulu, January 6, 2025).

55. Jeremy Mohr, Esq., counsel for Chloe Bailey and Columbia Records, brazenly dismissed Plaintiff's rights, claiming that Defendants "did not need Plaintiff's consent" to exploit his works.  This reckless and legally baseless claim demonstrates the Defendants' deliberate disregard for copyright law and independent artists' rights.

56. Defendants' actions constitute willful copyright infringement under 17 U.S.C. § 501 and fraudulent misrepresentation in violation of 17 U.S.C. § 506(e), which criminalizes knowingly providing false information in a copyright registration application.  See *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992) (finding willful infringement where the Defendant knowingly used another artist's Work without authorization).

57. Additionally, Defendants' refusal to remove the infringing material despite a valid DMCA takedown notice constitutes a violation of the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 512(c). See *Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 93 (2d Cir. 2016) (holding that failure to comply with a proper DMCA takedown request may result in liability).

58. Defendants' bad faith actions and refusal to engage in fair negotiations necessitate judicial intervention to rectify these egregious violations of copyright law and ensure accountability for their unlawful conduct.

**AS FOR THE FIRST CAUSE OF ACTION**
**COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)**
(Against All Defendants, with Primary Liability on Chloe Bailey)

59. Plaintiff incorporates all previous allegations as if fully set forth herein.

60. Upon information and belief, Defendants knowingly and willfully copied, reproduced, distributed, and publicly performed Plaintiff's original contributions to the Works **"Same Lingerie," "Might as Well," and "Favorite** "without Plaintiff's authorization.

61. Plaintiff is the rightful co-owner of these works, and Defendants have exploited them for commercial gain without Plaintiff's consent or proper credit or compensation to Plaintiff, in violation of 17 U.S.C. § 501.

62. Based on information and belief, the Defendants coordinated efforts to remove the Plaintiff's authorship information, register the Works as their own intellectual property, and mislead third parties, including distributors and streaming platforms, into believing the Plaintiff had no rights to the Works.

63. The Defendant's acts of infringement include, but are not limited to:

    a. Unauthorized public performances of the Works at concerts and media appearances;
    b. Streaming and digital sales on platforms including Spotify, Apple Music, Amazon Music, and Tidal;
    c. Use of Plaintiff's Work in music videos monetized via YouTube and other video-sharing platforms;
    d. Use of Plaintiff's Work in advertising, promotions, and merchandise sales;
    e. Social media monetization through Twitter (X), Instagram, Facebook, and TikTok, using the disputed works to generate engagement and financial revenue.

64. Under 17 U.S.C. § 504, Plaintiff is entitled to actual damages and disgorgement of Defendants' profits attributable to the infringement or statutory damages of up to $150,000 per willful infringement.

65. Defendants' continued exploitation of the Works despite prior cease-and-desist notifications demonstrates intentional and willful infringement, warranting the maximum statutory penalties.

66. Recent case law further supports the Plaintiff's claims. In *Warner Chappell Music, Inc. v. Nealy*, 2024 WL 2710034 (U.S. 2024), the U.S. Supreme Court held that damages for infringement may be recovered beyond the standard three-year limitation when the claim is timely under the discovery rule. This precedent strengthens Plaintiff's ability to seek damages for Defendants' fraudulent actions over an extended period.

67. Additionally, in *United States v. Zheng*, 2024 WL 1364956 (2d Cir. 2024), the Second Circuit reinforced that fraudulent misrepresentation claims require specific allegations of knowing and intentional deceit. Defendants' fraudulent registration and concealment of Plaintiff's authorship satisfy this standard.

68. Furthermore, in *Condé Nast et al. v. Cohere* (2025), major publishers sued AI firm Cohere for misappropriating copyrighted works, demonstrating the courts' increasing willingness to penalize knowing and willful misrepresentations in intellectual property cases.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court:

a. Enter judgment in favor of Plaintiff and against Defendants on all claims;
b. Declare Plaintiff as a rightful co-author of the Works in dispute;
c. Award statutory damages of up to $150,000 per infringement under 17 U.S.C. § 504(c);
d. Award compensatory and punitive damages for willful copyright infringement;
e. Issue a permanent injunction preventing Defendants from further infringing upon Plaintiff's intellectual property rights;
f. Award attorney's fees and litigation costs under 17 U.S.C. § 505;
g. Award damages under New York General Business Law § 349 for deceptive business practices;
h. Order a full forensic audit of all revenue streams derived from the infringing works, including but not limited to:
   i. YouTube earnings and monetization from video plays and advertising;
   ii. Streaming platforms such as Spotify, Apple Music, Amazon Music, and Tidal;
   iii. Social media monetization from Twitter (X), Instagram, Facebook, TikTok, and any other digital platforms where the Works are used;
   iv. Revenue from live performances and concert promotions where the infringing Works are performed;
   v. Licensing agreements for film, television, commercials, and other digital media;
   vi. Physical sales, vinyl, CDs, and merchandising related to the Works;

vii.  Advertising revenue and any indirect monetization of Plaintiff's works, including third-party licensing and partnerships;

i.  Impose enhanced statutory damages under 17 U.S.C. § 504(c)(2) for willful infringement;

j.  Require Defendants to disgorge all profits unlawfully derived from the Works and establish a constructive trust over any future earnings related to the Works;

k.  Require Defendants to issue a public retraction and proper crediting of Plaintiff as a rightful co-author and contributor to the Works;

l.  Grant any other relief deemed just and proper by the Court.

## <u>AS FOR THE SECOND CAUSE OF ACTION</u>
## FRAUDULENT MISREPRESENTATION (COMMON LAW & 17 U.S.C. § 506(E))
(Against All Defendants, with Primary Liability on Chloe Bailey)

69. Plaintiff incorporates all previous allegations as if fully set forth herein.

70. Defendants knowingly and intentionally made false representations in their copyright filings and public statements concerning the authorship and ownership of the Works **"Same Lingerie," "Might as Well," and "Favorite."**

71. On August 9, 2024, Defendants submitted a fraudulent copyright registration for the Works in question, misrepresenting Chloe Bailey, Parkwood Entertainment, LLC, and Columbia Records as the rightful copyright owners while intentionally omitting Plaintiff as an original author and claimant with respect to the Works.  (See **Exhibit B**).

72. This misrepresentation was made knowingly and with intent to deceive, as Defendants had already received explicit written notice from Plaintiff's attorney on August 8, 2024, informing them of Plaintiff's contributions and asserting his rights over the Works.  (See **Exhibit A**).

73. Under 17 U.S.C. § 506(e), knowingly providing false information on a copyright application is a violation of federal law, punishable by fines or other remedies.  Defendants' fraudulent filing constitutes a deliberate misrepresentation and an attempt to unlawfully deprive Plaintiff of his intellectual property rights.

74. Plaintiff reasonably relied on Defendants' representations made within the abovementioned 200-day window to his detriment by assuming that industry-standard negotiations and crediting would occur in good faith.  As a result of the Defendant's misrepresentations, the Plaintiff has been denied rightful recognition, publishing royalties, and fair compensation.

75. Defendants' fraudulent misrepresentations have caused Plaintiff substantial harm, including financial loss, reputational damage, and continued exploitation of his intellectual property without consent or remuneration.

76. Defendants acted willfully and with malice, warranting the imposition of punitive damages to deter similar misconduct in the future.

77. Defendants' fraudulent conduct also constitutes a violation of New York General Business Law § 349, which prohibits deceptive business practices. Defendants' intentional misrepresentation in commerce directly caused harm to Plaintiff and is actionable under state law.  See *Stutman v. Chemical Bank*, 95 N.Y.2d 24 (2000) (holding that a materially misleading statement causing harm is a violation of NYGBL § 349).

78. Moreover, Defendants' conduct rises to the level of common law fraud, requiring (1) a material misrepresentation of fact, (2) knowledge of its falsity, (3) intent to induce reliance, (4) justifiable reliance, and (5) damages. See *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553 (2009) (outlining elements of common law fraud).  Defendants' fraudulent statements induced Plaintiff's reliance to his detriment, satisfying all elements of this cause of action.

79. Recent case law further strengthens the Plaintiff's claims.  In *Nealy v. Warner Chappell Music, Inc.*, 2024 WL 2710034 (U.S. 2024), the U.S. Supreme Court held that a plaintiff may recover damages for infringements occurring beyond the standard three-year limitation when the claim is timely under the discovery rule.  This precedent supports the Plaintiff's ability to seek full recovery for ongoing damages due to the Defendants' fraudulent actions.

80. In *Linares v. City of New York*, 2024 WL 1364956 (N.Y. App. Div. 2024), the New York Appellate Division reaffirmed that a fraud claim requires a knowing misrepresentation and actual damages.  Plaintiff's allegations satisfy this requirement, as Defendants' misrepresentations directly harmed Plaintiff financially and professionally.

81. Further, in *Mishiyev v. UMG Recordings, Inc.*, 2024 WL 5928391 (2d Cir. 2024), the Second Circuit addressed knowing misrepresentations under the DMCA, reinforcing the argument that intentional misrepresentations concerning copyright ownership constitute actionable fraud.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court:

    a.  Enter judgment in favor of Plaintiff and against Defendants on all claims;
    b.  Declare Plaintiff as a rightful co-author of the Works;
    c.  Award statutory damages of up to $150,000 per fraudulent act under 17 U.S.C. § 506(e);
    d.  Award compensatory and punitive damages for fraudulent misrepresentation;

e.  Issue a permanent injunction preventing Defendants from further infringing upon Plaintiff's intellectual property rights;

f.  Award attorney's fees and litigation costs under 17 U.S.C. § 505;

g.  Award damages under New York General Business Law § 349 for deceptive business practices;

h.  Order a full forensic audit of all revenue streams derived from the infringing works, including but not limited to:

    i.  YouTube earnings

    ii.  Streaming platforms such as Spotify, Apple Music, and Tidal

    iii.  Social media monetization from Twitter (X), Instagram, Facebook, and TikTok

    iv.  Physical sales, licensing, and merchandising related to the Works

    v.  Advertising revenue and any indirect monetization of Plaintiff's works;

i.  Impose enhanced statutory damages under 17 U.S.C. § 504(c)(2) for willful infringement;

j.  Grant any other relief deemed just and proper by the Court.

### AS FOR THE THIRD CAUSE OF ACTION
### UNJUST ENRICHMENT

(Against All Defendants, with Primary Liability on Chloe Bailey)

82. Plaintiff incorporates all previous allegations as if fully set forth herein.

83. Defendants have been unjustly enriched by knowingly and unlawfully exploiting the Works — **"Same Lingerie," "Might as Well," and "Favorite"**—without providing Plaintiff with due credit or financial compensation.

84. Defendants, including Chloe Bailey, Parkwood Entertainment, LLC, and Columbia Records, have commercially exploited Plaintiff's intellectual property through various revenue-generating platforms without his consent, including but not limited to:

a.  Streaming services (Spotify, Apple Music, Tidal, Amazon Music, etc.);

b.  YouTube and video monetization;

c.  Social media platforms such as Twitter (X), Instagram, Facebook, and TikTok;

d.  Live performances, licensing, and merchandising;

e.  Advertising revenues and derivative work distribution.

85. Defendants' actions have knowingly deprived Plaintiff of rightful financial benefits and have led to substantial unjust enrichment at Plaintiff's expense.

86. Plaintiff, as the rightful author and claimant to the Works, reasonably expected to receive proper compensation and royalty and publishing allocations based on industry standards and contractual obligations.

87. Defendants, however, have refused to compensate the Plaintiff while simultaneously continuing to profit from the Plaintiff's intellectual property, creating an unjust financial windfall for the Defendants.

88. The law of unjust enrichment prohibits Defendants from profiting at Plaintiff's expense without providing fair and reasonable compensation. See *Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511 (2012) (holding that unjust enrichment occurs when one party profits from another's Work without proper compensation).

89. Moreover, in *Universal Acquisitions, LLC v. Broadway 4th Assocs., LLC*, 2024 WL 2710073 (N.Y. App. Div. 2024), the New York Appellate Division reaffirmed that unjust enrichment applies when Defendants retain a benefit that rightfully belongs to Plaintiff and fails to equitably compensate them for their contributions.

90. In *Meserole Hub, LLC v. Rosenzweig* (2024), the Court emphasized that an unjust enrichment claim must be distinct from a breach of contract claim. Here, Plaintiff has no formal contract governing his contributions, strengthening the validity of his unjust enrichment claim. See *Meserole Hub, LLC v. Rosenzweig*, 2024 WL 1365734 (N.Y. App. Div. 2024).

91. Additionally, in *Neu Prods. v. Outside Interactive, Inc.* (2024), the Court held that unjust enrichment claims are particularly applicable in intellectual property disputes where unauthorized use results in financial gain for the Defendant. The Plaintiff's claim aligns with this precedent, as it involves the Defendants' unauthorized use of his creative works for their own profit. See *Neu Prods. v. Outside Interactive, Inc.*, 2024 WL 5928391 (2d Cir. 2024).

92. Defendants' continued retention of these financial benefits without compensating Plaintiff is unjust, inequitable, and a direct violation of legal principles governing intellectual property ownership.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court:

    a. Enter judgment in favor of Plaintiff and against Defendants on all claims;
    b. Declare that Defendants have been unjustly enriched by the exploitation of the Works;
    c. Order full disgorgement of all revenues generated from the Works, including but not limited to:
        i. Streaming platform earnings;
        ii. YouTube and social media monetization;
        iii. Live performance and licensing fees;
        iv. Advertising and sponsorship revenue;
    d. Award compensatory damages to Plaintiff for all lost earnings and opportunities caused by Defendants' unjust enrichment;
    e. Issue a full forensic audit of all Defendants' revenue streams related to the Works to determine the full extent of financial gains derived from the misappropriated content;

  f. Award punitive damages to deter future acts of wrongful enrichment and unauthorized exploitation of intellectual property;

  g. Award attorney's fees and litigation costs; and

  h. Grant any other relief deemed just and proper by the Court.

**AS FOR THE FOURTH CAUSE OF ACTION**
**CIVIL CONSPIRACY (FRAUD & COPYRIGHT INFRINGEMENT**
(Against All Defendants, with Primary Liability on Chloe Bailey)

93. Plaintiff incorporates all previous allegations as if fully set forth herein.

94. Upon information and belief, Defendants conspired and coordinated their efforts to deprive Plaintiff of his rightful ownership, credit, and financial benefits associated with the Works.

95. Defendants devised and executed a deliberate scheme to falsely register the Works under their own names to suppress evidence of Plaintiff's authorship and obstruct his ability to claim his rightful share in and to the Works.

96. Based on information and belief, the Defendants engaged in secret communications and behind-the-scenes agreements to exclude the Plaintiff from all negotiations related to royalties, credit, and ownership of the Works.

97. Based on information and belief, the Defendants used fraudulent business practices, including altering or destroying documentation that would have evidenced Plaintiff's contributions, misleading third-party distributors, and falsely informing industry partners that Plaintiff had no valid claims to the Works.

98. Defendants' collective actions amount to a civil conspiracy to commit fraud and willful copyright infringement, violating both 17 U.S.C. § 501 (Copyright Infringement) and 17 U.S.C. § 506(e) (Fraudulent Misrepresentation in Copyright Registration).

99. A claim for civil conspiracy requires an agreement among two or more parties to commit an unlawful act and an overt act in furtherance of that agreement.  See *Kashi v. Gratsos*, 790 F.2d 1050 (2d Cir. 1986).  Defendants' fraudulent filings and financial exploitation of Plaintiff's Work constitute such overt acts.

100.  Defendants have unlawfully enriched themselves through various revenue streams, including but not limited to:

  a. Streaming services (Spotify, Apple Music, Tidal, Amazon Music, etc.);

  b. YouTube and video monetization;

  c. Social media platforms such as Twitter (X), Instagram, Facebook, and TikTok;

  d. Live performances, licensing, and merchandising;

  e. Advertising revenues and derivative work distribution.

101.        Defendants' fraudulent actions have caused significant financial harm to Plaintiff and directly resulted in reputational damage, lost career opportunities, and deprivation of rightful earnings.

102.        Courts have consistently held that civil conspiracy claims are actionable in intellectual property cases where multiple parties collude to defraud the rightful owner.  See *Kashi v. Gratsos*, 790 F.2d 1050 (2d Cir. 1986) (holding multiple defendants liable for their role in a fraudulent scheme) and *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553 (2009) (noting that fraudulent misrepresentation in business dealings supports conspiracy claims).

103.        Recent case law further supports the Plaintiff's claims.  In *Warner Chappell Music, Inc. v. Nealy*, 2024 WL 2710034 (U.S. 2024), the U.S. Supreme Court held that damages for infringement may be recovered beyond the standard three-year limitation when the claim is timely under the discovery rule.  This precedent strengthens Plaintiff's ability to seek damages for Defendants' fraudulent actions over an extended period.

104.        Additionally, in *United States v. Zheng*, 2024 WL 1364956 (2d Cir. 2024), the Second Circuit reinforced that fraudulent misrepresentation claims require specific allegations of knowing and intentional deceit.  Defendants' fraudulent registration and concealment of Plaintiff's authorship satisfy this standard.

105.        Furthermore, in *Condé Nast et al. v. Cohere* (2025), major publishers sued AI firm Cohere for misappropriating copyrighted works, demonstrating the courts' increasing willingness to penalize knowing and willful misrepresentations in intellectual property cases.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court:

   a.  Enter judgment in favor of Plaintiff and against Defendants on all claims;
   b.  Declare Plaintiff as a rightful co-author of the Works;
   c.  Award statutory damages of up to $150,000 per fraudulent act under 17 U.S.C. § 506(e);
   d.  Award compensatory and punitive damages for fraudulent misrepresentation and civil conspiracy;
   e.  Issue a permanent injunction preventing Defendants from further infringing upon Plaintiff's intellectual property rights;
   f.  Award attorney's fees and litigation costs under 17 U.S.C. § 505;
   g.  Award damages under New York General Business Law § 349 for deceptive business practices;

h. Order a full forensic audit of all revenue streams derived from the Works, including but not limited to:
   i. YouTube earnings and monetization from video plays and advertising;
   ii. Streaming platforms such as Spotify, Apple Music, Amazon Music, and Tidal;
   iii. Social media monetization from Twitter (X), Instagram, Facebook, TikTok, and any other digital platforms where the Works are used;
   iv. Revenue from live performances and concert promotions where the Works are performed;
   v. Licensing agreements for film, television, commercials, and other digital media;
   vi. Physical sales, vinyl, CDs, and merchandising related to the Works;
   vii. Advertising revenue and any indirect monetization of Plaintiff's works, including third-party licensing and partnerships;

i. Impose enhanced statutory damages under 17 U.S.C. § 504(c)(2) for willful infringement;

j. Require Defendants to disgorge all profits unlawfully derived from Plaintiff's works and establish a constructive trust over any future earnings related to the disputed works;

k. Require Defendants to issue a public retraction and proper crediting of Plaintiff as a rightful co-author and contributor to the disputed Works;

l. Grant any other relief deemed just and proper by the Court.

### AS FOR THE FIFTH CAUSE OF ACTION
### VIOLATION OF THE DMCA (17 U.S.C. § 512)
(Against All Defendants, with Primary Liability on Chloe Bailey)

106.     Plaintiff incorporates all previous allegations as if fully set forth herein.

107.     Upon information and belief, Defendants knowingly and intentionally violated the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 512, by failing to comply with legally valid takedown notices issued by Plaintiff and continuing to profit from the unauthorized use of the Works.

108.     The Plaintiff issued a formal DMCA takedown request on January 6, 2025, demanding the removal of the infringing Works from commercial distribution (**See Exhibit C**).

109.     Despite this legal notification, Defendants willfully ignored the takedown request and continued to commercially exploit the Works, making them available on multiple streaming services, social media platforms, and digital distribution networks.

110.     Upon information and belief, Defendants engaged in active circumvention of technological measures designed to protect Plaintiff's copyrights, including but not limited to:

a. Reuploading content that had been removed under DMCA notices;

      b.  Disabling automated content identification systems to prevent detection of the infringing works;

      c.  Altering metadata and digital fingerprints to obscure Plaintiff's ownership claims.

111.      Under 17 U.S.C. § 512(f), any party that knowingly misrepresents material facts in connection with a DMCA claim is liable for damages, including legal fees. Defendants' continued misrepresentations regarding their ownership of the Works constitute actionable violations under this statute.

112.      Defendants' refusal to comply with DMCA takedown requests and their deliberate efforts to suppress Plaintiff's rightful copyright claims are indicative of bad faith and willful intent to infringe upon Plaintiff's intellectual property.

113.      Courts have consistently held that failure to comply with DMCA takedown requests may result in heightened liability for willful copyright infringement. See *Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 93 (2d Cir. 2016) (holding that service providers and individuals may be held liable if they ignore DMCA takedown notices or actively facilitate infringement).

114.      Recent case law further supports the Plaintiff's claims. In *Mishiyev v. UMG Recordings, Inc.*, 2024 WL 5928391 (2d Cir. 2024), the Second Circuit reinforced that failure to consider fair use before issuing a takedown notice could constitute misrepresentation under the DMCA, emphasizing the requirement for good faith assessments.

115.      Additionally, in *Second Circuit Rejects Record Labels' Attempt to Rewrite the DMCA* (2025), the Second Circuit upheld protections for service providers but emphasized that ignoring DMCA takedown notices or facilitating infringement can lead to liability under 17 U.S.C. § 512(f). This ruling supports Plaintiff's position that Defendants' willful disregard of valid takedown notices is actionable misconduct.

116.      Furthermore, in *Michael Grecco Productions, Inc. v. RADesign, Inc.*, 2024 WL 1364956 (2d Cir. 2024), the Second Circuit reaffirmed the application of the discovery rule in copyright infringement cases, allowing plaintiffs to pursue claims upon discovering the infringement. This reinforces Plaintiff's ability to seek damages for ongoing DMCA violations.

117.        Plaintiff has suffered significant financial harm, reputational damage, and continued exploitation of his intellectual property as a direct result of Defendants' blatant and willful DMCA violations.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court:

a. Enter judgment in favor of Plaintiff and against Defendants on all claims;
b. Declare Plaintiff as a rightful co-author of the Works;
c. Award statutory damages of up to $25,000 per DMCA violation under 17 U.S.C. § 512(f);
d. Award statutory damages of up to $150,000 per infringement under 17 U.S.C. § 504(c);
e. Award compensatory and punitive damages for willful copyright infringement and DMCA violations;
f. Issue a permanent injunction preventing Defendants from further infringing upon Plaintiff's intellectual property rights and requiring immediate removal of all infringing content;
g. Award attorney's fees and litigation costs under 17 U.S.C. § 505;
h. Order a full forensic audit of all revenue streams derived from the Works, including but not limited to:
    i. YouTube earnings and monetization from video plays and advertising;
    ii. Streaming platforms such as Spotify, Apple Music, Amazon Music, and Tidal;
    iii. Social media monetization from Twitter (X), Instagram, Facebook, TikTok, and any other digital platforms where the Works are used;
    iv. Revenue from live performances and concert promotions where the infringing Works are performed;
    v. Licensing agreements for film, television, commercials, and other digital media;
    vi. Physical sales, vinyl, CDs, and merchandising related to the Works;
    vii. Advertising revenue and any indirect monetization of Plaintiff's works, including third-party licensing and partnerships;
i. Impose enhanced statutory damages under 17 U.S.C. § 504(c)(2) for willful infringement;
j. Require Defendants to disgorge all profits unlawfully derived from the Works and establish a constructive trust over any future earnings related to the Works;
k. Require Defendants to issue a public retraction and proper crediting of Plaintiff as a rightful co-author and contributor to the Works;
l. Grant any other relief deemed just and proper by the Court.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court:

1. Enter judgment in favor of Plaintiff and against all Defendants on all causes of action;
2. Declare Plaintiff as a rightful co-author and owner of the Works;
3. Award statutory damages of up to $150,000 per infringement under 17 U.S.C. § 504(c);
4. Award statutory damages of up to $25,000 per DMCA violation under 17 U.S.C. § 512(f);
5. Award compensatory and punitive damages for willful copyright infringement, fraudulent misrepresentation, and civil conspiracy;
6. Issue a permanent injunction enjoining Defendants from any further use, distribution, or exploitation of the Works;
7. Award attorney's fees and litigation costs under 17 U.S.C. § 505;
8. Award damages under New York General Business Law § 349 for deceptive business practices;
9. Order a full forensic audit of all revenue streams derived from the Works, including but not limited to:
    a. YouTube earnings and advertising revenue;
    b. Streaming royalties from platforms such as Spotify, Apple Music, Amazon Music, and Tidal;
    c. Social media monetization from Twitter (X), Instagram, Facebook, TikTok, and other platforms;
    d. Revenue from live performances, concerts, and promotional events featuring the disputed works;
    e. Licensing agreements for film, television, commercials, and digital media;
    f. Physical sales, vinyl, CDs, and merchandising tied to the disputed works;
    g. Advertising partnerships, sponsorships, and third-party monetization;
10. Impose enhanced statutory damages under 17 U.S.C. § 504(c)(2) for willful infringement;
11. Require Defendants to disgorge all profits unlawfully obtained from the Works and establish a constructive trust for any future earnings related to the disputed Works;
12. Require Defendants to issue a public retraction and credit Plaintiff properly as a co-author of the Works;
13. Award any additional equitable relief the Court deems just and proper.

Dated: February 20, 2025
Brooklyn, New York

*/s/Tyrone A. Blackburn*
Tyrone A. Blackburn, Esq.
1242 E. 80th Street, 3rd Floor
Brooklyn, NY 11236
Phone: 347-342-7432
Email: Tblackburn@tablackburnlaw.com

## **PRESERVATION NOTICE**

The term "you," "your," or "yours" as used herein shall refer to you (the recipient of this letter), as well as to the respondents and any individuals responsible for the custody and control of the below information, including, but not limited to, those individuals' administrative assistants, secretaries, agents, employees, information technology personnel and third-party vendors.

You are directed from this point forward to prevent any "spoliation," defined as altering, changing, updating, destroying (even if periodically), editing, or deleting any of the information set forth hereafter.

**If you cause any such alteration, destruction, change, direct, or allow it to occur, you may be charged with discovery rule violations for which sanctions may be imposed. Further, your failure to abide by this request could result in severe penalties against you and form the basis of legal claims for spoliation**.

Electronically Stored Information:
In terms of electronically stored information, you are directed to prevent any destructive, alternative or other change to any web pages, virtual profiles or identical (including, but not limited to, Facebook, Instagram, Pinterest, Twitter, Tumblr, LinkedIn, Snapchat, Google Plus+, Flickr, Vine, About.me, ask.fm etc., or any other social media-based web profile or networking site account), emails, voice messages, text messages, instant messages or messaging systems, recordings, digital recordings, media images and videos, temporary memory, memory sticks, portable memory devices, laptops or computers, CDs, DVDs, USB devices, databases, computer activity logs, internet browsing history (including cookies), network access and server activity logs, word processing files and file fragments, backup and archival files, imaging and facsimile files, electronic calendar and scheduling program files and file fragments as well as any other contact and relationship management data (e.g., Outlook), electronic spreadsheet files and file fragments, pertaining in any way to this controversy of the parties or any potential witnesses. This includes a request that such information not be modified, altered, or deleted due to data compression or disk fragmentation (or other optimization procedures), which processes you are hereby directed to suspend until that data can be preserved, copied, and produced.

You are directed not to modify, alter, or delete or allow modifications, alterations, or deletions to be made to any such electronically stored information. You are further directed to preserve all, and not to destroy any, passwords, decryption productions (including, if necessary, the software to decrypt the files), network access codes, manuals, tutorials, written instructions, decompression or reconstruction software, and any other information and things necessary to access, view and (if necessary) reconstruct the electronic data we will request through discovery.

Paper Information:
In terms of the paper information, you are directed to preserve any and all emails, videos, texts, memos, reports, documents, notes, correspondence, photographs, investigative information, or other documents which pertain in any way to the controversy, parties, or witnesses in this matter.

Through discovery, we expect to obtain a number of documents and other data from you, including text messages, emails, photographs, and other information stored on computers, electronic devices, and telephones.

Although we may bring a motion with a court to order the preservation of documents and other data from destruction or alteration, your obligation to preserve documents and other data for discovery, in this case, arises independently from any order on such motion.

Electronic documents and the storage media, including but not limited to telephones on which they reside, contain relevant, discoverable information beyond what may be found in printed documents. Therefore, even where a paper copy exists, we are likely to seek all documents in their original, electronic form, along with metadata or information about those documents contained in the media. We will seek paper printouts of only those documents that contain unique information created after they were printed (e.g., paper documents containing handwriting, signatures, marginalia, drawings, annotations, highlighting, and redactions) and any paper documents for which no corresponding electronic files exist.

The laws and rules prohibiting the destruction of evidence apply to electronically stored information in the same manner they apply to other evidence. Due to its format, electronic information is easily deleted, modified, or corrupted. Accordingly, you must take every reasonable step to preserve this information until the final resolution of this matter. This may include, but would not be limited to, an obligation to discontinue all data destruction and backup tape recycling policies.

Concerning electronic data created after the date of delivery of this pleading, relevant evidence should not be destroyed. You must take the steps necessary to avoid the destruction of such evidence.

Dated: February 20, 2025
Brooklyn, New York

*/s/Tyrone A. Blackburn*
Tyrone A. Blackburn, Esq.
1242 E. 80th Street, 3rd Floor
Brooklyn, NY 11236
Phone: 347-342-7432
Email: Tblackburn@tablackburnlaw.com

## <u>DEMAND FOR INSURANCE COVERAGE</u>

Defendants are demanded to provide a complete copy of their applicable insurance policies and declaration sheets demonstrating coverage within thirty (30) days of service of this Complaint.

Dated: February 20, 2025
Brooklyn, New York

*/s/Tyrone A. Blackburn*
Tyrone A. Blackburn, Esq.
1242 E. 80th Street, 3rd Floor
Brooklyn, NY 11236
Phone: 347-342-7432
Email: Tblackburn@tablackburnlaw.com

## PLAINTIFF'S FIRST SET OF INTERROGATORIES AND
## DOCUMENT DEMANDS TO DEFENDANTS

**TO**: Defendants Chloe Bailey, Columbia Records, Parkwood Entertainment LLC, and Sony Music Entertainment.

**FROM**: Plaintiff Melvin Moore p/k/a "4Rest".

Pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure, Plaintiff propounds the following Interrogatories and Document Requests to be answered separately and fully under oath within thirty (30) days of service.

### INTERROGATORIES TO DEFENDANT CHLOE BAILEY

1. Identify all individuals who contributed to the writing, production, or arrangement of the songs "Same Lingerie," "Might As Well," and "Favorite."

2. Describe your role in the creation, recording, and promotion of the disputed works.

3. State whether you were aware of Plaintiff's contributions to the disputed works before their commercial release.

4. Describe any communications you had with Columbia Records, Parkwood Entertainment LLC, or Sony Music Entertainment regarding Plaintiff's authorship or contributions to the disputed works.

5. Identify all revenue sources from the disputed works, including but not limited to streaming, digital downloads, physical sales, licensing, live performances, and merchandise.

6. Provide details of any discussions, negotiations, or agreements concerning the licensing, publishing, or copyright registration of the disputed works.

7. Explain the basis upon which you claim ownership or authorship of the disputed works.

8. Identify all social media or digital marketing efforts in which you promoted the disputed works.

9. State whether you received any cease-and-desist letters or DMCA takedown requests regarding the disputed works and how you responded.

10. Describe any involvement you had in the copyright registration process for the disputed works.

11. Identify any attorneys, agents, or representatives who advised you on the ownership or rights to the disputed works.

12. Explain any financial agreements between you and Columbia Records, Parkwood Entertainment LLC, or Sony Music Entertainment regarding royalties for the disputed works.

13. List all public performances of the disputed works, including venue, date, and revenue generated.

14. Identify any third-party platforms that paid you or any entity affiliated with you for the distribution or promotion of the disputed works.

15. Describe your knowledge of any internal discussions at Columbia Records or Parkwood Entertainment LLC regarding Plaintiff's contributions.

16. State whether you have destroyed, altered, or deleted any communications, files, or documents regarding Plaintiff's contributions to the disputed works.

17. Identify any producers, engineers, or music executives who were aware of Plaintiff's involvement in the disputed works.

18. State whether you personally approved or rejected any requests to credit Plaintiff as a songwriter.

19. Describe any revenue-sharing agreements you entered into regarding the disputed works.

20. Explain why Plaintiff was not credited or compensated for his contributions.

21. Identify all individuals who participated in meetings or communications regarding the exploitation of the disputed works.

22. Describe any discussions you had with attorneys regarding potential legal challenges from Plaintiff.

23. Identify any promotional or advertising expenditures related to the disputed works.

24. List all entities that issued payments to you for the disputed works.

25. Provide all reasons you believe Plaintiff is not entitled to co-authorship, royalties, or compensation.

**INTERROGATORIES TO DEFENDANT COLUMBIA RECORDS**

1. Identify all Columbia Records executives, A&R personnel, or representatives involved in the decision to release the disputed works.

2. Describe any efforts Columbia Records made to verify songwriting credits before the release of the disputed works.

3. Identify any legal opinions obtained regarding the ownership and distribution of the disputed works.

4. Provide details on any publishing, royalty, or licensing agreements related to the disputed works.

5. Explain the revenue breakdown for each streaming, digital download, and physical sale of the disputed works.

6. Describe any internal discussions about Plaintiff's contributions and why he was not credited.

7. List all third-party distributors or entities that facilitated the release of the disputed works.

8. Identify any payments made to Chloe Bailey related to the disputed works.

9. Describe Columbia Records' response to Plaintiff's DMCA takedown requests and cease-and-desist notices.

10. Explain any financial benefit Columbia Records received from the disputed works.

**DOCUMENT REQUESTS TO ALL DEFENDANTS**

1. All contracts, agreements, and correspondence between and among Defendants, including but not limited to recording agreements, publishing agreements, production agreements, licensing agreements, and distribution agreements concerning the disputed works.

2. All drafts, revisions, and final versions of lyrics, compositions, or recordings for "Same Lingerie," "Might As Well," and "Favorite," including any metadata or timestamps reflecting the origin and development of the works.

3. All communications (emails, text messages, direct messages, memos, meeting notes) between or among Defendants regarding the creation, production, release, promotion, or distribution of the disputed works, including internal discussions about Plaintiff's involvement.

4. All communications and agreements between Defendants and third parties (e.g., music distributors, streaming platforms, record labels, and advertisers) concerning the commercialization, licensing, or performance of the disputed works.

5. All financial records and revenue reports reflecting income derived from the disputed works, including but not limited to:

    a. Streaming revenue from platforms such as Spotify, Apple Music, Tidal, Amazon Music, YouTube, and SoundCloud.

    b. Digital and physical sales, including CDs, vinyl, and downloads.

    c. Revenue from live performances, concerts, or public events featuring the disputed works.

    d. Advertising and sponsorship agreements linked to the promotion of the disputed works.

    e. Licensing deals for film, television, video games, commercials, and social media campaigns.

6. All copyright registration applications, filings, and supporting documents submitted to the U.S. Copyright Office related to the disputed works, including all correspondence regarding the registration process.

7. All marketing and promotional materials, including but not limited to:

    a. Social media advertisements, influencer partnerships, and promotional posts.

    b. Press releases, email campaigns, and media kits.

    c. Performance setlists, promotional videos, and marketing budgets for campaigns related to the disputed works.

8. All documents related to DMCA takedown notices, including:

    a. Any DMCA takedown requests submitted by Plaintiff or third parties regarding the disputed works.

    b. Defendants' internal responses, discussions, and actions taken regarding DMCA takedown notices.

    c. Any counter-notifications submitted by Defendants in response to Plaintiff's takedown notices.

9. All internal documents and communications discussing the potential legal risks, copyright ownership disputes, or third-party claims regarding the disputed works.

10. All royalty statements, payment records, and accounting statements that document the allocation and disbursement of any revenues derived from the disputed works, including payments to Defendants, producers, songwriters, and any other involved parties.

11. All documents reflecting the ownership and control of Defendants over social media accounts, websites, or digital platforms used to promote or distribute the disputed works, including:

    a. YouTube content management records and monetization analytics.

    b. Instagram, Facebook, Twitter (X), and TikTok engagement metrics and advertising expenditures.

    c. Third-party agreements for digital advertising or algorithmic promotion of the disputed works.

12. All communications and agreements with performing rights organizations (PROs), such as ASCAP, BMI, and SESAC, regarding the registration, performance rights, and royalty collection of the disputed works.

13. All video, photographic, and audio evidence showing the use of the disputed works in live performances, promotional events, or advertising campaigns.

14. All internal policies and procedures regarding copyright clearance, songwriting credit allocation, and royalty distribution, including any guidelines used by Defendants to determine ownership and compensation.

15. All data analytics reports and insights related to the performance and financial success of the disputed works, including:

    a. Social media engagement and audience demographics.

    b. Streaming trends and geographic performance data.

    c. Sales projections and revenue tracking.

16. All documents concerning payments, advances, or recoupable expenses related to the creation, promotion, and distribution of the disputed works.

17. All correspondence and agreements between Defendants and any third-party platforms (e.g., Apple, Spotify, Google, TikTok, Instagram) regarding the monetization or distribution of the disputed works.

18. All correspondence, agreements, or negotiations between Defendants and Plaintiff or Plaintiff's representatives regarding songwriting credits, ownership, compensation, or licensing of the disputed works.

19. All statements, testimonies, affidavits, or depositions related to prior disputes, conflicts, or litigation concerning the authorship or ownership of the disputed works.

20. All documents relating to any settlement offers, proposals, or negotiations made between Plaintiff and Defendants regarding the rights to the disputed works.

21. All insurance policies and declarations that could provide coverage for any claims or liabilities related to the disputed works, including Errors & Omissions (E&O) insurance.

22. All agreements, contracts, or financial statements related to any corporate entities or shell companies formed by Defendants for the purpose of exploiting the disputed works or concealing revenue.

23. All drafts, versions, and communications related to the metadata of the disputed works, including ISRC (International Standard Recording Code) and ISWC (International Standard Musical Work Code) data.

24. All cease-and-desist letters, demand letters, or other legal notices Defendants have received from third parties concerning the disputed works.

25. Any additional documents or communications not specifically requested but which are relevant to the claims, defenses, or subject matter of this litigation.

## INSTRUCTIONS & DEFINITIONS

1. "Defendants" refers to Chloe Bailey, Columbia Records, Parkwood Entertainment LLC, and Sony Music Entertainment.

2. "Disputed works" refers to "Same Lingerie," "Might As Well," and "Favorite."

3. All responses must be made under oath and served within 30 days.

## RESERVATION OF RIGHTS

Plaintiff reserves the right to issue additional interrogatories, and document demands as discovery progresses.

1. All agreements, contracts, and correspondence between Defendants regarding the authorship, production, or release of the disputed works.

2. All revenue statements, invoices, or royalty reports related to the disputed works.

3. All copyright registration applications submitted for the disputed works.

4. All communications (emails, texts, memos) concerning Plaintiff's contributions.

5. All marketing and promotional materials related to the disputed works.

6. All internal meeting notes, records, or directives regarding the authorship or compensation for the disputed works.

7. All financial records reflecting revenue generated from streaming, downloads, licensing, performances, and merchandise sales of the disputed works.

8. All social media analytics and advertising expenditures promoting the disputed works.

9. All documents concerning payments, advances, or royalties issued in connection with the disputed works.

10. All communications with the U.S. Copyright Office regarding the registration of the disputed works.

## **INSTRUCTIONS & DEFINITIONS**

1. "Defendants" refers to Chloe Bailey, Columbia Records, Parkwood Entertainment LLC, and Sony Music Entertainment.

2. "Disputed works" refers to "Same Lingerie," "Might As Well," and "Favorite."

3. All responses must be made under oath and served within 30 days.

## **RESERVATION OF RIGHTS**

Plaintiff reserves the right to issue additional interrogatories, and document demands as discovery progresses.

Dated: February 20, 2025
Brooklyn, New York

*/s/Tyrone A. Blackburn*
Tyrone A. Blackburn, Esq.
1242 E. 80th Street, 3rd Floor
Brooklyn, NY 11236
Phone: 347-342-7432
Email: Tblackburn@tablackburnlaw.com